### UNITED STATES v. LAWRENCE et al.

(Circuit Court, N. D. California. October 5, 1892.)

(No. 10,738.)

NAVIGABLE WATERS—OBSTRUCTIONS—HYDRAULIC MINING—INJUNCTION.

An injunction will be granted, at the suit of the United States, to restrain hydraulic mining operations, when it appears that the dam con-

structed in connection with the impounding works is of wood, standing in the bed of a torrential mountain stream, and of necessity is liable to be carried away by freshets, so as to discharge all the impounded debris into the streams, thereby causing great damage to navigation.

In Equity. Suit by the United States against Charles H. Lawrence and others to enjoin the operation of certain hydraulic mining, as dangerous to navigation. Injunction granted.

A. L. Rhodes and Alfred Barstow, for the United States.
C. W. Cross, for respondent.

GILBERT, Circuit Judge. The bill filed by the complainant in this case is similar to the bill in the case of U. S. v. North Bloomfield Mining Co., (53 Fed. Rep. 625;) and the defenses here made are substantially the same as those made in that suit. It is claimed in the answer of the defendants that they have established a system of impounding works whereby all material liable to injure the navigability of the streams referred to in the bill is impounded and retained upon the premises, and does not enter the navigable streams. The mining debris from the defendants' mines escapes through a shaft 90 feet deep, sunk in the lower level of the mine. Thence it is discharged into a tunnel 3,000 feet long, which empties into Canyon creek. About a quarter of a mile below the exit of the tunnel a dam has been constructed across the channel of the creek. This dam is a crib dam, composed of heavy fir logs, pinned together at the corners, and raised to the height of 28 or 30 feet. The interior of the crib is filled with stones. The dam has caused the water to set back to a considerable distance in the stream, creating a pond. Into the upper portion of this pool the mining debris is carried from the tunnel. During the time this restraining device has been used, the mining debris has worked its way down towards the dam, and filled up some portion of the reservoir. The exact proportion of the pool which yet remains to be filled is not definitely fixed by the testimony, but the evidence would indicate that there still remains an impounding pool extending back from the dam a distance of about 1,000 feet, in which no portion of the debris or material discharged appears visible above the surface of the water. It appears, also, that the current of the water in the dam is sluggish, and that during the operation of the mine, and the discharge of debris into the pool, there has been an appreciable current in the water; but the evidence does not show that any considerable amount of debris calculated to lodge in the streams below, or to injure their navigability, has been discharged over the dam. The width of the impounding pool is from 125 to 200 feet. The dam itself is constructed at a narrow place in the stream, and it is anchored against rocks projecting from either side of the ravine, which rocks are in situ, are firm, and afford a strong and solid abutment to support the dam.

In deciding whether a mining operation conducted with this kind of an impounding device should be restrained by the court, I am moved, not so much by consideration of the question whether or

not the mining debris has been successfully impounded by the defendants heretofore, as by the probability of its escape from the impounding pool, and its consequent injury to the navigability of the lower streams in the future. The dam in question appears from the evidence to be strong and well built. It is doubtless capable of sustaining great pressure. It is a wooden dam, however, and it stands in the bed of a torrential stream. It necessarily follows that it is liable to be carried away by freshets. The same forces that have broken similar dams heretofore are liable at any time to destroy this dam; and, if it should be thus destroyed, no one can doubt that all the mining debris now impounded above the dam would by the same destructive force be carried into the streams below. Canyon creek empties into the north fork of the Yuba river about a mile below the dam. The north fork of the Yuba discharges its waters into the main Yuba, thence into the Feather river, thence into the Sacramento. The evidence would indicate that the impounding reservoir is not full, but that its capacity, while considerably reduced, at present may be increased by raising the dam to a height of 100 feet or more.

It is evident that with the increased height of the dam a corresponding increase in its length must be made, thereby entailing a corresponding increase of the danger of its breaking. In view of the principles announced in the decision of this court in the Mining Debris Case, in 1884, 9 Sawy. 441, 18 Fed. Rep. 753, and in view of the justly-grounded apprehension of injury to navigation in the case of any wooden dam constructed across the channel of a mountain stream, as in the case now before the court, I am of the opinion that an injunction should issue, as prayed for in the bill.